1  James C. Shah (SBN 260435)
   MILLER SHAH, LLP
2  1230 Columbia Street, Ste. 1140
   San Diego, CA 92101
3  Telephone: 619-235-2416
   Facsimile: 866-300-7367
4  jcshah@millershah.com

5  Tarek H. Zohdy (Cal. Bar. No. 247775)
   Tarek.Zohdy@capstonelawyers.com
6  Cody R. Padgett (Cal. Bar. No. 275553)
   Cody.Padgett@capstonelawyers.com
7  Laura E. Goolsby (Cal Bar No. 321721)
   Laura.Goolsby@capstonelawyers.com
8  Capstone Law APC
   1875 Century Park East, Suite 1000
9  Los Angeles, California 90067

10  Norberto J. Cisneros, Esq. (Cal. Bar No. 182001, NV Bar No. 8782)
    Barbara McDonald, Esq. (Cal. Bar. No. 281722, NV Bar No. 11651)
11  Maddox & Cisneros, LLP
    3230 S. Buffalo Drive, Suite 108
12  Las Vegas, Nevada 89117

13  Attorneys for Plaintiff

14              UNITED STATES DISTRICT COURT

15            SOUTHERN DISTRICT OF CALIFORNIA

16

17  MINERVA MARTINEZ,                    Case No.: '21 CV 2146 L    DEB
    individually, and on behalf of a class
    of similarly situated individuals,   **CLASS ACTION COMPLAINT**
18                                        **FOR:**
                    Plaintiff,
19                                        (1)  Breach of Express Warranty;
        v.                                (2)  Violation of Nevada Deceptive
20                                             Trade Practices Act, NRS §
    NISSAN NORTH AMERICA INC.,                 598.0903 et seq.;
21  a Delaware corporation,               (3)  Breach of Common Law Implied
                                               Warranty of Merchantability and
22                  Defendant.                 Breach of Implied Warranty
                                               Pursuant to Nev. Rev. Stat. §§
23                                             104.2314 and 104A.2212;
                                          (4)  Declaratory Judgment Act, 28
24                                             U.S.C. § 2201, et seq. and Fed. R.
                                               Civ. P. 57; and
25                                        (5)  Unjust enrichment
26
                                          **DEMAND FOR JURY TRIAL**
27

28

Plaintiff Minerva Martinez ("Ms. Martinez") brings this action for herself and on behalf of all persons in the United States ("Class Members") who purchased or leased any 2017-2018 Nissan Altima or Nissan Sentra equipped with a Continuously Variable Transmission ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by Nissan North America, Inc. ("Nissan" or "Defendant").

1.     Defendant Nissan North America, Inc., designed, manufactured, marketed, distributed, sold, warranted, and/or serviced the Class Vehicles. Plaintiff alleges as follows:

## INTRODUCTION

2.     This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

3.     Nissan manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicle's Xtronic Continuously Variable Transmission ("CVT") was defective.

4.     Specifically, Plaintiff is informed and believes, and based thereon alleges, that the CVT transmission contains one or more design and/or manufacturing defects. The CVT is defective as detailed herein (collectively, the "CVT Defect"). Discovery will show the Class Vehicles are designed and/or manufactured with an inadequate cooling system. The CVT fluid temperature in Class Vehicles is controlled by a small cooler, rather than a radiator. This cooler is too small and/or manufactured so poorly that it fails to properly regulate the temperature in the fluid which lubricates all the components of the CVT, including the belts, pulleys, and valves. This design and/or manufacturing defect makes the transmission unreasonably sensitive to heat. The CVT in every Class Vehicle is thus prone to overheating, which activates a fluid temperature protection mode and reduces transmission performance, among other symptoms. As a result, drivers experience conditions ranging from shuddering, jerking,

failure to accelerate, all the way to catastrophic transmission failure.

5.      The CVT Defect causes sudden, unexpected shaking and violent jerking (commonly referred to as "juddering" or "shuddering") when drivers attempt to accelerate their vehicles; it causes the vehicle to lag or delay when the driver tries to accelerate, causing an unsafe, unpredictable acceleration; it exhibits a hard deceleration or "clunk" when drivers either slow down or accelerate at low speeds; it causes complete transmission failure in the middle of roadways, and it suffers catastrophic failure, necessitating replacement.

6.      Nissan sold the Class Vehicles with a 5-year, 60,000-mile powertrain warranty that purports to cover the CVT. However, owners and lessees have complained that their CVTs failed and required replacement just outside the warranty period. As Class members have reported to the National Highway Traffic Safety Administration ("NHTSA"), Nissan's authorized dealerships are replacing transmissions both within, and just outside, the warranty period.

7.      The CVT Defect is inherent in each Class Vehicle and was present at the time of sale.

8.      Plaintiff is informed and believes, and based thereon alleges, that since 2013, if not earlier, Nissan has been aware that the CVT installed in the Class Vehicles would require frequent replacement, including replacements just outside of warranty, that the replacement transmissions installed would be equally defective as the originals, and that the CVT would cause the symptoms of the CVT Defect described above (juddering, lag when attempting to accelerate, hard deceleration, complete failure and other symptoms), and that the Class Vehicles' CVT would require frequent repair, yet Nissan continued to install the defective CVT. Moreover, Nissan not only refused to disclose the problem to owners and lessees, but it also actively concealed, and continues to conceal, its knowledge concerning the CVT Defect.

9.     Nissan undertook affirmative measures to conceal CVT failures and other malfunctions through, among other things, Technical Service Bulletins ("TSB") issued only to its authorized repair facilities.

10.     Nissan had superior and/or exclusive knowledge of material facts regarding the CVT Defect as a result of its pre-production testing, design failure mode analysis, customer complaints made to NHTSA, prior litigation, and customer complaints made to dealers.

11.     As a result of Nissan's failure to disclose material facts regarding the CVT Defect to its customers, the Class has incurred significant and unexpected repair costs. Nissan's omission of the CVT's marked tendency to fail, whether within warranty or just outside of warranty, at the time of purchase is material because no reasonable purchaser or lessee expects to spend thousands of dollars to repair or replace essential transmission components in the early years of owning their vehicles.

12.     The CVT Defect is also material to purchasers and lessees because it presents an unreasonable safety risk. Transmission malfunctions can impair any driver's ability to control his or her vehicle and greatly increase risk of collision. For example, turning left across traffic in a vehicle with delayed and unpredictable acceleration is plainly unsafe. In addition, these conditions can make it difficult to safely change lanes, merge into traffic, turn, accelerate from stop lights/signs, and accelerate onto highways or freeways.

13.     Nissan's failure to disclose the alleged defect has caused Plaintiff and putative class members to lose use of the Class Vehicles and/or incur costly repairs that have conferred an unjust substantial benefit upon Nissan.

14.     Had Nissan disclosed the CVT Defect to Plaintiff and Class Members, they would not have purchased the Class Vehicles, would have paid less for them, and/or would have required Nissan to replace or pay for the replacement of the defective CVT with a non-defective version before their

warranty periods expired.

### THE PARTIES

**Plaintiff Minerva Martinez**

15.    Plaintiff Minerva Martinez is a citizen of Nevada. She purchased her new 2017 Nissan Altima, VIN 1N4AL3AP4HC110364, from United Nissan, an authorized Nissan dealership in Las Vegas, Nevada, on April 5, 2017. As of September 29, 2021, the mileage on the vehicle was approximately 70,000 miles.

16.    Passenger safety and reliability were significant factors in Plaintiff Martinez's decision to purchase her vehicle. Prior to purchasing her car, Ms. Martinez test drove the Nissan Altima with a dealership salesperson who touted the vehicle's attributes and benefits, including the smooth ride and more powerful engine. Before making her purchasing decision, Ms. Martinez also reviewed the "Monroney" window sticker on the vehicle, Nissan materials that discussed the car's warranty program, and the Nissan warranty booklet.

17.    If any of Nissan's advertisements or marketing materials had accurately disclosed the CVT defect, it is likely the defect would have been sufficiently widely reported that Ms. Martinez would have learned of the CVT Defect through her research, the materials she viewed at the dealership, or in her conversations with salespeople at the dealership before she purchased the vehicle.

18.    Ms. Martinez would not have purchased the vehicle, or would have paid less for it, if she had learned or been made aware the CVT was defective.

19.    Per the warranty's requirements, Ms. Martinez operated her vehicle at all times in a foreseeable manner, consistent with its intended use. Nevertheless, after she purchased her vehicle, Ms. Martinez began experiencing loss of power, failure to accelerate, and the feeling of the vehicle not stopping even when she was not applying any pressure to the gas pedal. She also experienced the vehicle not accelerating even when she was applying pressure to

1    the gas pedal.

2        20.    On or around September 3, 2020, with 51,644 miles on the

3    odometer, Ms. Martinez took her vehicle to United Nissan in Las Vegas, Nevada.

4    She informed the service advisor that the car intermittently loses power when

5    accelerating and going uphill. She further informed United Nissan that such loss

6    of power and failure to accelerate was so extreme that she felt as though the

7    brakes were engaging even though her foot was pressing down on the

8    accelerator. The service records indicate the technician verified Ms. Martinez'

9    complaint and reprogrammed the transmission control module in order to try and

10   address the issue. This attempt at repair did not fix the problem.

11       21.    Following the visit to United Nissan, Ms. Martinez continued to

12   experience problems with her vehicle's transmission. Specifically, Ms. Martinez

13   reports experiencing poor or failed acceleration, an extremely delayed response

14   time between applying pressure to the gas pedal and the car beginning to

15   accelerate, as well as frequent occasions where the vehicle's transmission would

16   not accelerate at all.

17       22.    On or around January 4, 2021, Ms. Martinez was again

18   experiencing delayed acceleration when her vehicle lurched forward into another

19   vehicle as a result of the transmission's non-responsiveness.  Ms. Martinez

20   brought her vehicle to United Nissan on January 8, 2021, with 59,905 miles on

21   the odometer for diagnosis and repair of the transmission problems she believes

22   caused her accident just days prior. According to the service records and despite

23   Ms. Martinez' complaint, Nissan mischaracterized the complaint as one

24   involving brakes and refused to diagnose or attempt to repair the transmission

25   safety issue. This refusal was despite Nissan's keeping Ms. Martinez' vehicle at

26   the dealership for thirty-three (33) days.

27       23.    As a result of Ms. Martinez' fear of the transmission issue and

28   Nissan's failure to attempt to repair or even diagnose the problem, she

immediately purchased an Advantage Care extended service contract from United Nissan upon their release of the vehicle back to her, on February 10, 2021. Ms. Martinez purchased this service contract at a total $2,836.00 out of pocket cost.

24.     Despite providing Nissan and its authorized dealer more than one opportunity to repair her vehicle, Ms. Martinez continues to experience the CVT defect.

**Defendant Nissan North America, Inc.**

25.     Defendant Nissan North America, Inc., is a corporation that was originally, and during the relevant time period, organized and in existence under the laws of the State of California and registered to do business in California. Nissan North America, Inc., is headquartered in Franklin, Tennessee. Nissan North America, Inc., designs and manufactures motor vehicles, parts, and other products for sale in California and throughout the United States. Nissan is the warrantor and distributor of the Class Vehicles in California and throughout the United States. During the time period during which the Class Vehicles were designed, marketed, and sold, Nissan North America, Inc., was a California corporation organized and in existence under the state of California. At the end of 2021, Nissan North America, Inc., changed its state of incorporation from California to Delaware.

26.     Nissan North America, Inc., continues to operate its subsidiary, Nissan Design America, headquartered in the Southern District of California at 9800 Campus Point Drive, San Diego, CA 92121.

27.     Defendant Nissan North America, Inc.'s parent company is Nissan Jidosha Kabushiki Kaisha d/b/a Nissan Motor Co., Ltd. (hereinafter, "Nissan Japan"). Nissan Motor Co., Ltd. is publicly traded in Japan.

28.     Defendant, through its various entities, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles,

including the Class Vehicles, nationwide and in California.

29.    At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in the Southern District of California and throughout the United States of America.

## JURISDICTION

30.    This is a class action.

31.    Members of the proposed Class, which includes citizens of California, are citizens of states other than Tennessee, where Nissan is headquartered, California, where Nissan North America, Inc., was incorporated until the end of 2021, and Delaware, where Nissan North America, Inc., is newly incorporated.

32.    On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

33.    Jurisdiction is proper in this Court because at least one class member is of diverse citizenship from one defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

34.    Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

35.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, *inter alia,* a substantial part of the events or omissions giving rise to the claims alleged herein occurred in and emanated from this judicial district, and because Defendant has caused harm to Class Members residing in this district.

36.    Additionally, Nissan North America, Inc.'s division, Nissan Design America, resides in the Southern District of California and is headquartered at 9800 Campus Point Drive, San Diego, CA 92121.

37.     During the time period during which the Class Vehicles were designed, marketed, and sold, Nissan North America, Inc., was a California corporation organized and in existence under the state of California. At the end of 2021, Nissan North America, Inc., changed its state of incorporation from California to Delaware.

## FACTUAL ALLEGATIONS

38.     Nissan is known throughout the United States as a major manufacturer of automobiles and related products, which are sold under the Nissan brand.

39.     Nissan designed, manufactured, imported, distributed, and/or marketed the Class Vehicles in the United States, including in Nevada and throughout the United States and its territories. Nissan also provides sales, repair, and maintenance services for the Class Vehicles through its nationwide network of authorized dealers and service providers.

40.     Upon information and belief, the only method Nissan makes available for the purchase of Class Vehicles is through its nationwide network of authorized dealers.

41.     The CVT is an automatic transmission that uses two variable-diameter pulleys with a steel belt running between them to change speed, instead of a gearbox and clutch system. Rather than relying on the fixed gear ratios of the traditional automatic transmission, the pulleys can adjust their width to make the belt turns faster or slower, depending on the speed of the vehicle and the torque needed. The CVT thus "simultaneously adjusts the diameter of the 'drive pulley' that transmits torque from the engine and the 'driven pulley' that transfers torque to the wheels" to allow for an infinite number of gear ratios. In theory, the CVT chooses the gear ratio optimum for driving conditions.

42.     The CVT, allegedly offering more efficient power delivery and better fuel economy, is standard in the Class Vehicles.

43.     The illustration in Figure One, below, depicts the way the CVT's belt and pulley system adjusts the gear ratio to change speed:



44.     Consumers complain that their vehicles take an inordinately long time to accelerate from a stop or low speed, exhibit a hard deceleration or "clunk" when drivers either slow down or accelerate at low speeds, shudder and shake or make a loud clunking or knocking sound when the CVT finally selects the appropriate gear ratio, and completely fail to accelerate. Consumers also frequently complain of unusually high RPMs and/or a loud whining once they achieve speed that exceeds their reasonable expectations for noise from the CVT. Finally, in addition to hesitations, slow response, and loud noises, the lifespan of the CVT in the Class Vehicles is unreasonably short.

45.     Plaintiff is informed and believes discovery will show the Class Vehicles are designed and/or manufactured with an inadequate cooling system. The CVT fluid temperature in class vehicles is controlled by a small cooler, rather than a radiator. This cooler is too small and/or manufactured so poorly that it fails to properly regulate the temperature in the fluid which lubricates all the components of the CVT, including the belts, pulleys, and valves. This design and/or manufacturing defect makes the transmission unreasonably sensitive to heat. The CVT in every Class Vehicle is thus prone to overheating, which activates a fluid temperature protection mode and reduces transmission performance, among other symptoms. As a result, drivers experience conditions ranging from shuddering, jerking, failure to accelerate, all the way to

CLASS ACTION COMPLAINT

1    catastrophic transmission failure.

2         46.    Nissan sold the class vehicles with a 5-year, 60,000-mile powertrain

3    warranty that purports to cover the CVT. However, consumers have complained

4    that their CVTs have failed and required replacement just outside the 60,000-

5    mile warranty period. As Class Members have reported to the National Highway

6    Traffic Safety Administration ("NHTSA"), Nissan's authorized dealerships are

7    replacing transmissions both within, and just outside, the 60,000- mile warranty

8    period.

9         47.    The CVT Defect alleged is inherent in, and the same for, all Class

10   Vehicles.

11        48.    On information and belief, dating back to at least 2013, Nissan was

12   aware of material facts regarding the CVT Defect, but failed to disclose them to

13   consumers. As a result of this failure, Plaintiff and Class Members have been

14   damaged.

15        49.    The CVT Defect poses an unreasonable safety hazard. Hesitations,

16   slow and failed responses, hard braking and catastrophic transmission failure

17   impair drivers' control over their vehicles, which significantly increases the risk

18   of accidents. For example, turning left across traffic in a vehicle with delayed

19   and unpredictable acceleration is unsafe. In addition, these conditions can make

20   it difficult to safely change lanes, merge into traffic, turn, brake slowly or

21   accelerate from stop light/sign, and accelerate onto highways or freeways.

22   **Complaints Lodged with NHTSA**

23        50.    Federal law requires automakers like Nissan to be in close contact

24   with NHTSA regarding potential auto defects, including imposing a legal

25   requirement (backed by criminal penalties) compelling the confidential

26   disclosure of defects and related data by automakers to NHTSA, including field

27   reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No.

28   106-414, 114 Stat. 1800 (2000).

51.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id*. Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id*. Thus, Nissan knew or should have known of the many complaints about the CVT Defect logged by NHTSA's Office of Defects Investigation ("ODI"), and the content, consistency, and large number of those complaints alerted, or should have alerted, Nissan to the CVT Defect.

52.     For years, owners of Nissan Altima and Sentra models have publicly complained to the United States government about the CVT Defect in Class Vehicles. The ODI is an office within NHTSA. ODI conducts defect investigations and administers safety recalls supporting the NHTSA's mission to improve safety on the Nation's highways. All automobile manufacturers routinely monitor and analyze NHTSA complaints because this information is used in determining if a recall should be issued. Indeed, automobile manufacturers are required by law to report any potential safety defects to the United States government.

53.     The following complaints regarding the Altima made to NHTSA and elsewhere online demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate Nissan's awareness of the problems with the CVT and Defect, including how dangerous they are for drivers. These safety complaints relate to the CVT Defect (spelling and grammar mistakes remain as found in the original) (NHTSA, Consumer Complaints; https://www.nhtsa.gov/vehicle/2017/NISSAN/ALTIMA/4%252520DR/FWD#complaints; https://www.nhtsa.gov/vehicle/2018/NISSAN/ALTIMA/4%252520DR/FWD#co

1 | mplaints(October 2021).

a.   **DATE OF INCIDENT:** June 15, 201 7
**DATE COMPLAINT FILED:**   November 8, 2017
**SUMMARY:**  MY TRANSMISSION STOPPED
WORKING WHILE I WAS DRIVING FIRST IN THE
CITY AND IT CONTINUED TO WHEN I WENT ON
THE HIGHWAY TO THE POINT I HAD NO POWER
AND THE WHEN I PRESSED THE GAS NOTHING
WOULD HAPPEN. I HAD TO HAVE THE COMPUTER
IN THE TRANSMISSION REPLACED AND THE CAR
STILL IDLES AS IF IT WILL CUT OFF AT ANY
MOMENT. THAT WAS AT 40K AND I JUST HAD TO
REPLACE THE O2 SENSOR AT 60K

b.   DATE OF INCIDENT: December 28, 2016
**DATE COMPLAINT FILED:** February 15, 2017
**SUMMARY:** VEHICLE HESITATES WHEN
ACCELERATED. GEARS STICK OCCASIONALLY.
SMOKE SMELL OCCURRING. VEHICLE SEEMS TO
GET WORSE WHEN GOING DOWN A HILL. WILL
NOT GO HIGHER THAN 10 MPH WHEN THIS
OCCURS.

c.   **DATE OF INCIDENT:** April 24, 2021
**DATE COMPLAINT FILED:** April 25, 2021
**NHTSA ID NUMBER:** 11413861
**SUMMARY:** I HAVE A 2017 NISSAN ALTIMA SV,
4CYL, 2.5L... I AM HAVING WORSENING
PROBLEMS WITH ACCELERATION. WHEN
ATTEMPTING TO PULL OFF FROM A RED LIGHT
FOR EXAMPLE, IT WILL HESITATE FOR ABOUT 4,5
SECONDS, RPMS INCREASE THEN A SURGE OF
ACCELERATION. ALSO, WHILE DRIVING IT WILL
LOSE SPEED WITH MY FOOT ON THE GAS, EVEN
WITH THE RPMS UP AS IF IT WERE MOVING
FASTER.. THANKFULLY THE DRIVERS BEHIND ME
WERE ATTENTIVE OR IT COULD HAVE CAUSED
ME AND OTHERS A GREAT DEAL OF DAMAGE,
LIKE WHEN I WAS TRYING TO ACCELERATE
FROM A CROSS STREET TURN LANE. IT WAS
SPORADIC AT FIRST; I WENT TO VALVOLINE AND
GOT REPLACEMENT TRANSMISSION FLUID, AND
THE GUY TURNED OFF THE ENGINE LIGHT. IT
STARTED UP AGAIN A FEW WEEKS LATER, AND I
GOT A NEW AIR FILTER AND WENT BACK FOR A
FUEL SYSTEM CLEANING. ANOTHER GUY RESET
THE ENGINE LIGHT AGAIN, AND NOW(ABOUT 3
WEEKS LATER)IT'S BACK WITH THE SAME
PROBLEM. SOMETIMES, I'D PULL OVER AND TURN
OFF THE CAR AND IT HELPED A BIT.
NOW(YESTERDAY) THAT ISN'T HELPING AND THE
SLOW ACCELERATION AND SPEED HAPPENS
EVERY TIME. I USED THE DIAGNOSING TOOL AT
AUTO ZONE WHICH READ, "P0776-PRESSURE

CONTROL SOLENOID B PERFORMANCE OR STUCK OFF". I AM SEEING THAT THERE ARE MANY COMPLAINTS ABOUT THE EXACT SAME THING, AND EVEN A RECALL ON THE MODELS UP TO 2016 REGARDING THIS, BUT 2017 AND AFTER SEEM TO BE GETTING IGNORED.

d.  **DATE OF INCIDENT:** April 12, 2021
    **DATE COMPLAINT FILED:** April 20, 2021
    **NHTSA ID NUMBER:** 11413037
    **SUMMARY:** TL* THE CONTACT OWNS A 2017 NISSAN ALTIMA. THE CONTACT STATED THAT WHILE THE VEHICLE WAS STOPPED AT A RED TRAFFIC LIGHT, THE VEHICLE STALLED AFTER THE ACCELERATOR PEDAL WAS DEPRESSED. THE CHECK ENGINE WARNING WAS LIGHT ILLUMINATED. THE VEHICLE WAS TOWED TO NISSAN OF MISSION HILLS (11000 SEPULVEDA BLVD, MISSION HILLS, CA 91345) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE SENSOR FOR THE BRAKE PADS WERE REPLACED HOWEVER, THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 76,000.

e.  **DATE OF INCIDENT:** April 18, 2021
    **DATE COMPLAINT FILED:** April 28, 2021
    **NHTSA ID NUMBER:** 11408683
    **SUMMARY:** VEHICLE KEEPS SHIFTING INTO SPORTS MODE WITHOUT ACTIVATING IT

f.  **DATE OF INCIDENT:** April 1, 2021
    **DATE COMPLAINT FILED:** April 16, 2021
    **NHTSA ID NUMBER:** 11406970
    **SUMMARY:** CVT TRANSMISSION IS JERKING, STALLING, SHUDDERING, AND HESITATING WHILE DRIVING. CAR ONLY HAS 65K MILES. ISSUE HAS BEEN HAPPENING RANDOMLY FOR ABOUT A WEEK. I DO NOT FEEL COMFORTABLE DRIVING IN THE CAR ANYMORE BECAUSE I FEEL THAT THIS MALFUNCTION CAN EVENTUALLY CAUSE AN ACCIDENT.

g.  **DATE OF INCIDENT:** December 24, 2019
    **DATE COMPLAINT FILED:** March 9, 2021
    **NHTSA ID NUMBER:** 11399947
    **SUMMARY:** ALL THE SUDEN I WILL START MY CAR AND GIVE IT GAS AND WILL NOT MOVE AS IF IT WAS BEING FORCE TO RUN. THIS HAS HAPPEN MANY TIME AFTER THIS DAY.

h.  **DATE OF INCIDENT:** February 20, 2021
    **DATE COMPLAINT FILED:** March 8, 2021
    **NHTSA ID NUMBER:** 1N4AL3AP7HN

1  **SUMMARY:** THE CAR DOESNT GO, IT STUTTERS, AND THEN SUDDENLY GOES. TAKE A LOT OF
2  TIME TO CHANGE GEAR, IN SMALL HILLS DOESN'T GO UP, THE RPM AND SPEED JUST GO
3  DOWN. THE CHECK ENGINE LIGHT COMES ON AND OFF. NISSAN DEALERS SAYS IT IT OUT OF
4  GUARANTEE. A NISSAN ALTIMA 2017, 85K MILES AND ITS OUT OF NISSAN GUARANTEE ALREADY,
5  AND THAT THEY CANT DO ANYTHING ABOUT IT. UNBELIEVABLE. SADDLY FOR ME THE CARE IS
6  ALREADY PAYED OFF, THEY HAVE ALREADY ALL THEIR MONEY, SO NO NEED TO FIX MY PROBLEM.
7  ALSO WHEN I BOUGHT THE CAR, IN A NISSAN DEALER, THEY GAVE A FAKE CARFAX OF THE
8  CAR, THEY OMIT AN CRASH REPORT, ALSO THEY ADVERTISED THE CAR FOR A VERY MUCH
9  LOWER PRICE THAN THEY SOLD IT TO ME, THEY PUT A LOT OF FEES ON IT THAT THE PRICE WAS
10  2K OVER THAN THE ADVERTISED.

11  i.  **DATE OF INCIDENT:** February 28, 2021
    **DATE COMPLAINT FILED:** March 15, 2020
12  **NHTSA ID NUMBER:** 11398278
    **SUMMARY:** THERE IS A DELAY IN
13  ACCELERATION FROM A COMPLETE STOP. STOPS FOR RED LIGHTS, STOP SIGNS AND TURNS ARE
14  EXTREMELY DANGEROUS AS THE ISSUE OF DELAYED ACCELERATION OCCURS RANDOMLY
15  AND WITHOUT WARNING.

16  j.  **DATE OF INCIDENT:** February 14, 2021
    **DATE COMPLAINT FILED:** February 14, 2021
17  **NHTSA ID NUMBER:** 11396206
    **SUMMARY:** CAR STOPPED WHEN ON STOP LIGHT
18  WAS IN MOTION AND NEVER CAME BACK HAVE TO TOWE THE CAR . SOME TIME IT START AND
19  SOMETIME NOT . SO IT'S SCARY IF YOU PRESS THE BRAKE AND STOPS AND SOMEONE FROM
20  BEHIND CAN HIT YOU.

21  k.  **DATE OF INCIDENT:** January 1, 2021
    **DATE COMPLAINT FILED:** February 4, 2021
22  **NHTSA ID NUMBER:** 11394671
    **SUMMARY:** WAS DRIVING AND THE STALL
23  WHILE I PULL OUT INTO TRAFFIC ACTING LIKE IT DON'T WANT TO GO

24  l.  **DATE OF INCIDENT:** January 1, 2021
    **DATE COMPLAINT FILED:** January 22, 2021
25  **NHTSA ID NUMBER:** 11389384
    **SUMMARY:** THE VEHICLE SHUTS OFF WHILE
26  DRIVING, DOES NOT MAINTAIN A SOLID SPEED, INCREASES AND DECREASES SPEED ON IT OWN,
27  WHEN STOPPED THE VEHICLE WITH NOT GO WHEN THE GAS PEDAL IS PRESSED, IT WILL TAKE
28  A FEW MOMENTS AND THEN ACCELERATE AT A

1
2
3
4
5

REALLY HIGH SPEED OR FORCE. THE WINDOWS RANDOMLY STOP WORKING, THE LIGHTS FLICKER ON AND OFF, THE STEERING COLUMN TIGHTENS AND THE VEHICLE RANDOMLY SHUTS OFF WHILE DRIVING IT ON THE ROAD. IT WILL DISPLAY THAT THE KEY IS MISSING AND TURN OFF. IT HAS TAKEN SEVERAL MINUTES TO RESTART THE CAR. THIS HAPPENS DURING IDLE AND IN MOTION, ON THE HIGHWAY OR IN THE CITY.

6
7
8
9
10
11
12
13
14
15

m.     **DATE OF INCIDENT:** November 7, 2020
**DATE COMPLAINT FILED:** January 19, 2021
**NHTSA ID NUMBER:** 11388775
**SUMMARY:** WHEN I WAS DRIVING MY CAR AND STOPPING AT A TRAFFIC LIGHT AND WHEN I WOULD START TO DRIVE AGAIN THE CAR AT TIMES HAS A PROBLEM WITH ACCELERATION AND ALL OF SUDDENLY THE CHECK ENGINE LIGHT CAME ON I SCANNED THE ENGINE CODE AND IT SHOWED A PO 776 TRANSMISSION PRESSURE CONTROL SOLENOID B PERFORMANCE OR STUCK OFF THE CAR WOULD NOT MOVE BUT WHEN I TURNED IT OFF AFTER 10 MINUTES REST THE CAR WILL START TO DRIVE AGAIN BUT WITH VERY SLOW ACCELERATION AND THE RPM WAS VERY HIGH WHEN THE CAR WAS ONLY MOVING AT 20 MPH, MY UNDERSTANDING IS THAT THIS HAPPENS TO A LOT OF THE CARS OWNERS BUT THESE NISSAN CARS NISSAN

16
17
18
19
20
21
22

n.     SHOULD FIX THE PROBLEMS WITH THE TRANSMISSION THEY BUILT KNOW FULL WELL THAT THESE TRANSMISSIONS ARE NO GOOD ,CURRENTLY THERE'S NO RECALLS ON THE 2017 NISSAN ALTIMA SV WITH THIS ISSUE I WILL NEVER BUY ANOTHER NISSAN AGAIN TILL THEY FIX THE TRANSMISSION PROBLEMS COSTING THE CUSTOMERS MONEY AND NOT FIXING THE PROBLEMS WITH THEIR BAD TRANSMISSION THAT THEY KNOW ABOUT SHAME ON NISSAN THE TRASH VEHICLES OF THE CENTURY ONLY GOOD FOR A SHORT TIME THEN IT JUNK AFTERWARDS

23
24
25
26
27
28

o.     **DATE OF INCIDENT:** January 8, 2020
**DATE COMPLAINT FILED:** January 8, 2020
**SUMMARY:** TL* THE CONTACT OWNS A 2018 NISSAN ALTIMA. THE CONTACT STATED THAT WHEN THE VEHICLE WAS STARTED AND SHIFTED TO DRIVE, THE VEHICLE HESITATED AND THEN LUNGED FORWARD WHILE THE RPM'S REVVED UP. THE CONTACT ALSO STATED THAT THE FAILURE RECURRED APPROXIMATELY 10 TIMES. THE VEHICLE WAS TAKEN TO STAR NISSAN LOCATED AT 5757 WEST TOUHY AVENUE, NILES,

1
2

IL 60714, (704) 867-8341 WHERE THE TRANSMISSION CONTROL MODULE SOFTWARE WAS UPDATED. . .

p.   **DATE OF INCIDENT:** August 15, 2021
**DATE COMPLAINT FILED:** August 15, 2021
**SUMMARY:** CVT TRANSMISSION FAILURE WHILE IN TRANSPORT. IT PUT MY FAMILY AT RISK BEING STRANDED ON BUSY HIGHWAY. NO WARNING LIGHTS OR INDICATION OF ISSUE EXCEPT VEHICLE STOPPED PERFORMING EFFECTIVELY. THE DEALER ACKNOWLEDGED ISSUES IN THIS AND OTHER MODELS AND HAD TRANSMISSION REPAIRED AT MY COST. VEHICLE WAS DIAGNOSED BY DEALER WHICH USING OBD THEY FOUND TRANSMISSION FAILURE CODES.

q.   **DATE OF INCIDENT:** September 3, 2021
**DATE COMPLAINT FILED:** September 3, 2021
**SUMMARY:** THE CONTACT OWNS A 2018 NISSAN ALTIMA. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 50 MPH, THE VEHICLE SUDDENLY LOST MOTIVE POWER WITHOUT WARNING. THE CONTACT COASTED TO THE SIDE OF THE ROAD AND WAS UNABLE TO RESTART THE VEHICLE. THE VEHICLE WAS TOWED TO THE DEALER WHO DIAGNOSED THAT THE TRANSMISSION FAILED AND NEEDED TO BE REPAIRED. THE VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND OPENED A CASE. THE APPROXIMATE FAILURE MILEAGE WAS 69,000.

54.   The following complaints regarding the 2018 and 2019 Sentra made to NHTSA online demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate Nissan's awareness of the problems with the CVT and Defect, including how dangerous they are for drivers. These safety complaints relate to the CVT Defect (spelling and grammar mistakes remain as found in the original). (NHTSA, Consumer Complaints; https://www.nhtsa.gov/vehicle/2018/NISSAN/SENTRA (complaints);

https://www.nhtsa.gov/vehicle/2019/NISSAN/SENTRA%252520SR%252520T URBO/4%252520DR/FWD:
**2018 NISSAN SENTRA NHTSA POWER TRAIN COMPLAINTS**

a.   **DATE OF INCIDENT:**  June 8, 2021

**DATE COMPLAINT FILED:** July 8, 2021
**NHTSA ID NUMBER:** 11423947
**SUMMARY:** WHEN PASSING SOMEONE IT WILL NOT GO OVER 80 IT WILL SHIFT DOWN, RPMS WILL JUMP BACK AND FORTH UNTIL IT SHIFTS CORRECTLY AND THEN IT WILL ACCELERATE. THIS IS AN ISSUE FOR SEVERAL NISSANS SINCE 2003 THAT THEY WILL NOT FIX.

b.  **DATE OF INCIDENT:** June 1, 2021
**DATE COMPLAINT FILED:** June 14, 2021
**NHTSA ID NUMBER:** 11420918
**SUMMARY:** MY SENTRA AT AROUND 75MPH STARTS SHIFTING BACK AND FORTH ABNORMALLY BETWEEN GEARS. THE ONLY THING THAT RELEASES IT IS LETTING GO OF GAS, FORCING TO DROP SPEED, WHICH ALSO FORCES A SHIFT TO HIGHER GEAR. YOU FEEL A JERK WHEN IT'S JUMPING GEARS, BUT THE RPM ARROW ALSO JERKS BETWEEN, STARTED AROUND 30K MILES AND GETTING WORSE.

c.  **DATE OF INCIDENT:** April 24, 2021
**DATE COMPLAINT FILED:** May 11, 2021
**NHTSA ID NUMBER:** 11416184
**SUMMARY:** TL* THE CONTACT OWNS A 2018 NISSAN SENTRA. THE CONTACT STATED WHILE DRIVING 80 MPH, THE VEHICLE FAILED TO PERFORM AS NEEDED. THERE WAS NO WARNING LIGHT ILLUMINATED. THE DRIVER AVOIDED A NEAR CRASH. THE VEHICLE COASTED ONTO THE SHOULDER OF THE ROADWAY. THE VEHICLE WAS THEN TOWED TO UNITED NISSAN IMPERIAL (2361 HWY 86, IMPERIAL, CA 92251, (760) 352-2900) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE TRANSMISSION FAILED AND NEEDED TO BE REPLACED. THE VEHICLE WAS NOT YET REPAIRED. THE MANUFACTURER WAS CONTACTED AND INFORMED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 118,000.

d.  **DATE OF INCIDENT:** April 30, 2021
**DATE COMPLAINT FILED:** May 3, 2021
**NHTSA ID NUMBER:** 11415028
**SUMMARY:** TL* THE CONTACT OWNS A 2018 NISSAN SENTRA. THE CONTACT STATED THAT WHILE PARKED, THE GEAR SHIFTER FAILED TO SHIFT INTO DRIVE OR ANY OTHER GEARS. THE VEHICLE WAS NOT YET DIAGNOSED NOR REPAIRED. THE DEALER AND MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 71,000

e.  **DATE OF INCIDENT:** January 6, 2021
**DATE COMPLAINT FILED:** January 27, 2021
**NHTSA ID NUMBER:** 11390273
**SUMMARY:** I PURCHASED A NISSAN SENTRA BACK IN JUNE 2020 SO I HAVEN'T HAD IT VERY LONG. IT

CLASS ACTION COMPLAINT

1  HAD ROUGHLY ABOUT 52K MILES WHEN I
   PURCHASED IT AND I PURCHASE IT BECAUSE MY
2  FAMILY HAS HAD INFINITI'S AND NISSAN AND MY
   DAD WORKS FOR AN INFINITI DEALERSHIP. ALL OF
3  OUR VEHICLES HAVE BEEN VERY RELIABLE. SO
   WHY WOULD THIS ONE BE ANY DIFFERENT. I
4  RECENTLY HAD AN ISSUE DRIVING THIS VEHICLE
   WHERE IT JUST STARTED THIS WEIRD JUTTER OR
5  VIBRATION AND THEN THERE WAS LOSE OF
   POWER/HESITATION AND WOULDN'T GO PAST 45 TO
6  50 MPH. I LIVE ABOUT 71 MILES AWAY FROM WORK
   AND HAD A HARD TIME GETTING IT TO WORK.
7  AFTER GETTING OFF WORK I DROPPED MY CAR OFF
   BY THE CLOSEST NISSAN DEALER TO FIND OUT
8  WHAT WAS GOING ON WITH MY CAR. THE SERVICE
   ADVISOR CALLED ME BACK TO SAY THAT MY
9  TRANSMISSION WAS DONE AND THAT I NEEDED A
   NEW ONE. I THEN FOUND OUT THAT THE EXTENDED
10 WARRANTY THAT I PURCHASED FROM THE DEALER
   EXPIRED ALREADY AND THAT I WOULD HAVE TO
11 PAY FOR A TRANSMISSION IN A CAR THAT I JUST
   BOUGHT LESS THAN A YEAR AGO. AFTER FURTHER
12 RESEARCH I FOUND WHERE NISSAN HAS A REALLY
   BAD ISSUE WITH THEIR CVT TRANSMISSIONS AND
13 THAT THERE WAS A RECALL ON THEM. WHEN I
   ASKED NISSAN DEALER ABOUT IT THEY SAID THAT
14 IT ONLY COVERS UP TO 2017 NISSAN SENTRA. MY
   DAD DID SOME RESEARCH AND FOUND THAT THERE
15 IS A SERVICE BULLETIN REFERENCE (NTB20-035A)
   FOR 2018-2019 NISSAN SENTRA; CVT JUDDER. WHEN
16 WE CONTACTED NISSAN CONSUMER AFFAIRS FOR
   ASSISTANCE THEY SAID THAT MY CAR WASN'T
17 INCLUDED IN THIS, AND THAT THEY WOULDN'T
   COVER ANYTHING. NISSANS SERVICE BULLETIN
18 SAYS THAT IF ANY OF SEVERAL CODES POPPED UP
   WHILE DIAGNOSING THE VEHICLE (P2859) REPLACE
19 THE CVT TRANSMISSION. THIS IS MY FIRST VEHICLE
   PURCHASE ON MY OWN, I'M 23, AND I STILL HAVE
20 TO MAKE THE PAYMENTS ON THIS CAR. I WAS
   QUOTED A TRANSMISSION REPAIR COST OF 4K TO
21 5K. NISSAN SHOULD BE RESPONSIBLE FOR THIS
   ISSUE BEING THAT THEY KNOW OF THE PROBLEM.
22 ANY HELP ON THIS IS GREATLY APPRECIATED.

   f.   **DATE OF INCIDENT:**  October 12, 2020
23      **DATE COMPLAINT FILED:**  October 12, 2020
        **NHTSA ID NUMBER:**  11363959
24      **SUMMARY:**  AFTER 37,122 MILES THE
        TRANSMISSION ON MY 2018 NISSAN SENTRA WENT
25      BAD ON ME. I TOOK IT TO THE DEALERSHIP AND
        THEY INFORMED ME THAT THE ENTIRE
26      TRANSMISSION NEEDED TO BE REPLACED. THE
        DEALERSHIP ALSO SAID THE FUEL PUMP AND
27      CLUSTER NEEDED TO BE REPLACED. I READ THAT
        THERE HAVE BEEN OTHER COMPLAINTS MADE
28      ABOUT THE TRANSMISSION SYSTEM FOR THESE

CLASS ACTION COMPLAINT

1   CARS, AND THERE SHOULD DEFINITELY BE A
    RECALL.

2   g.   **DATE OF INCIDENT:** March 9, 2019
         **DATE COMPLAINT FILED:** August 17, 2020
3        **NHTSA ID NUMBER:** 11349933
         **SUMMARY:** RPMS ARE GOING UP AND DOWN WHEN
4        MAINTAINING THE SAME SPEED . WE TOOK IT BACK
         TO THE DEALERSHIP AT 9000 MILES AND THEY TOLD
5        US IT'S A SPECIAL TRANSMISSION.BELT DRIVEN NOT
         GEAR DRIVEN. WE TOOK IT BACK A FEW MORE
6        TIMES AND FINALLY WE TOOK IT TO MIDAS AND
         THEY TOLD US TO TAKE IT TO DEALERSHIP FOR THE
7        TRANSMISSION PROBLEM AFTER THEY DROVE IT
         AND NOTICED RPMS GOING UP AND DOW
8
9   h.   **DATE OF INCIDENT:** March 16, 2020
         **DATE COMPLAINT FILED:** March 17, 2020
10       **NHTSA ID NUMBER:** 11318508
         **SUMMARY:** STOPPED GOING FORWARD WHEN AT
11       TRAFFIC LIGHT WILL ONLY GO IN REVERSE.
         DEALERSHIP SAYS WARRANTY IS UP AND IT WILL
12       COST 4000$ TO FIX. I AM CONFUSED AS TO HOW A
         CAR THAT WAS BOUGHT 4/20/2018 HAS THE NEED
13       FOR THE TRANSMISSIOM TO BE REPLACED. THIS
         CAR HAS HAD REGULAR MAINTENANCE AND I DO
14       NOT BELIEVE AFTER PAYING 479.09 A MONTH FOR
         THE PAST 23 MONTHS I SHOULD BE SPENDING AN
15       ADDITIONAL 4000$

16  i.   **DATE OF INCIDENT:** January 25, 2020
         **DATE COMPLAINT FILED:** January 28, 2020
17       **NHTSA ID NUMBER:** 11302489
         **SUMMARY:** THE TRANSMISSION IS GOING OUT I
18       WAS ONLY ABLE TO USE REVERSE, MY CAR HAS
         46000 MILES I HAVE NEVER BEEN LATE ON
19       CHANGING MY OIL AND GETTING THE CAR
         SERVICED, WOULD NOT RECOMMEND BUYING A
20       SENTRA

21  j.   **DATE OF INCIDENT:** December 13, 2018
         **DATE COMPLAINT FILED:** December 2, 2019
22       **NHTSA ID NUMBER:** 11286331
         **SUMMARY:** TRANSMISSION OVER HEATS.
23       TRANSMISSION HAS A LOUD NOISE AND DRAGS
         SINCE 60,000 MILES

24  k.   **DATE OF INCIDENT:** October 12, 2020
         **NHTSA ID NUMBER:** 11363959
25       **SUMMARY:** AFTER 37,122 MILES THE
         TRANSMISSION ON MY 2018 NISSAN SENTRA WENT
26       BAD ON ME. I TOOK IT TO THE DEALERSHIP AND
         THEY INFORMED ME THAT THE ENTIRE
27       TRANSMISSION NEEDED TO BE REPLACED. THE
         DEALERSHIP ALSO SAID THE FUEL PUMP AND
28       CLUSTER NEEDED TO BE REPLACED. I READ THAT

THERE HAVE BEEN OTHER COMPLAINTS MADE ABOUT THE TRANSMISSION SYSTEM FOR THESE CARS, AND THERE SHOULD DEFINITELY BE A RECALL.

l.   **DATE OF INCIDENT:**  October 18, 2021
**NHTSA ID NUMBER:** 11437135
**SUMMARY:**  I HAVE A CVT TRANSMISSION AND SOMETIMES IT'S HARD FOR ME TO EVEN START TO MOVE MY VEHICLE BECAUSE OF THIS SPUTTERING. I'VE SEEN SO MANY COMPLAINTS ON THIS CVT AND IT'S REALLY STARTING TO HINDER ME FROM GETTING BACK AND FORTH.

**2019 NISSAN SENTRA NHTSA POWER TRAIN COMPLAINTS**

a.   **DATE OF INCIDENT:** January 21, 2021
**NHTSA ID NUMBER:** 11433401
**SUMMARY:** THE CONTACT OWNS A 2019 NISSAN SENTRA. THE CONTACT STATED WHILE DRIVING 45 MPH AND DEPRESSING ON THE ACCELERATOR PEDAL, THE VEHICLE WOULD NOT FULLY ACCELERATE AS DESIRED. THERE WAS AN UNKNOWN WARNING LIGHT ILLUMINATED. THE CONTACT ACTIVATED THE HAZARD LIGHTS AND PULLED THE VEHICLE OVER TO THE SIDE OF THE ROAD. THE CONTACT WAITED A FEW MINUTES AND RESTARTED THE VEHICLE AND WAS ABLE TO CONTINUE TO DRIVE TO HER RESIDENCE. THE CONTACT TOOK THE VEHICLE TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THE VEHICLE WITH A MAJOR TRANSMISSION FAILURE. THE CONTACT TOOK THE VEHICLE TO THE LOCAL DEALER AND IT WAS AGREED THAT THE TRANSMISSION WAS FAULTY. THE CONTACT WAS INFORMED THAT THE MECHANIC COULD NOT REPAIR THE VEHICLE BECAUSE THEY COULD NOT FIND THE CODING FOR THE REPAIR IN THEIR SYSTEM. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 35,901.

b.   **DATE OF INCIDENT:** June 12, 2021
**NHTSA ID NUMBER:** 11420674
**SUMMARY:** WHEN I TRY TO GET A QUICK ACCELERATION IT DOESN'T WANT TO MOVE IT HAS TROUBLE CLIMBING HILLS LIKE I HAD TO PUT IT TO THE FLOOR TO MAKE HIM GO ANYWHERE AND SOMETIMES WHEN I'M DRIVING TO RPMS GOES UP IN THE MIDDLE OF DRIVING WITHOUT ME HITTING THE GAS I ALSO NOTICED SOMETIMES THE BUTTONS ON THE STEERING WHEEL DON'T ALWAYS WORK I HAVE TO TURN OFF THE CAR AND TURN IT BACK ON KIND OF WORRIED ABOUT THE TRANSMISSION I HAVE A 2009 NISSAN ALTIMA TRANSMISSION IT'S

GOING BAD ON IT BEFORE IT'S TIME SO I'M HOPING THIS CAR IS NOT HAVING THE SAME THING

c. **DATE OF INCIDENT:** June 6, 2021
**NHTSA ID NUMBER:** 11419850
**SUMMARY:** TRANSMISSION SHUDDERS AND LOSES POWER WHEN NEEDING TO QUICKLY ACCELERATE. NISSAN HAS PAID ME AN INCONVIENECE FEE BECAUSE ALL OF THEIR 2019 NISSAN SENTRA SR MODELS EXPERIENCE THE SAME ISSUE. THIS IS EXTREMELY DANGEROUS! WHEN NEEDING TO GET OUT OF A SITUATION QUICKLY, THE VEHICLE SHUDDERS AND HESITATES BEFORE CATCHING A GEAR. THIS HAS HAPPENED TO ME IN AN INTERSECTION. SOMEONE RAN A REDLIGHT AND I NEED TO MOVE QUICKLY TO AVOID AN ACCIDENT. THE VEHICLE SPUTTERED AND WHEN IT CAUGHT IT'S GEAR, ALMOST LURCHED ME INTO ONCOMING TRAFFIC. NISSAN HAS PLACED 7 TRANSMISSIONS IN MY CAR AND ALL ARE THE SAME. I NEVER TOOK THEIR REPLACEMENT CAR BECAUSE WHEN I DROVE TWO OTHER OF THE SAME MODELS OF MY CAR. THEY DID THE SAME THING! NISSAN NEEDS TO BE HELD ACCOUNTABLE AND FIND A WAY TO FIX THE TRANSMISSION SO IT DOES NOT DO THIS SHUDDER ANYMORE. I'VE SEEN MANY CONSUMER REVIEWS THAT STATE THE SAME PROBLEM. I FEEL THIS IS WIDESPREAD ENOUGH AND A BIG ENOUGH SAFETY DEFECT THAT NISSAN NEEDS TO FIX BEFORE IT KILLS SOMEONE BECAUSE THEY CAN MOVE OUT OF THE WAY IN TIME.

**Customer Complaints on Third-Party Websites[1]**

55. Consumers similarly complained about the defect on various online forums. Below are just some examples:

a. September 13, 2018: My 2013 Altima rides like a dream over 40 mph! Don't drive local , as coming up on 40mph the car shakes and shutters. Esp if turning! Passengers have asked me WTF is wrong with my car! It have a CVT, and I understand there are a lot of complaints about this issue. https://www.carcomplaints.com/Nissan/Altima/2013/transmission/CVT_shuttering_vibration_hesitation_running_roughly.shtml

b. May 1, 2017: I bought a brand new Nissan Altima in 2014 from the local Nissan dealership . . . . I feel my Nissan is

---

[1] Complaints referencing earlier model years to the Class Vehicles are included because, on information and belief, those model years are equipped with the same Xtronic CVT transmission and suffer from the same design and/or manufacturing defect.

jerking a little once a while. Now it's happening 3 or 4 times a day.

. . . .

Last Sunday heading back home from Orange County my Nissan STALLED in the middle of the freeway during heavy rain. It took 3 hours to get back home with AAA tow truck towing my Nissan.

. . . .

the service dept told me that that happens a lot to 2014 Nissan Altima & I am not the first ANGRY OWNER they are facing. https://www.carcomplaints.com/Nissan/Altima/2014/transmission/shudders_and_jerks.shtml

c.    February 1, 2017: Brand new 2016 Nissan Altima purchased end of November. No vibration or shuddering until beginning of Feb 2017. Have had it at two different Nissan dealerships and they agree they feel the vibration and shudder but state there is nothing wrong with vehicle and that it's normal even though it didn't do it the first 2 months or so. They state that it is the CVT. https://www.carcomplaints.com/Nissan/Altima/2016/transmission/vibration_in_transmission.shtml

d.    July 12, 2021: Bought a 2017 Nissan Altima that only had 17,000 miles on it. Owned the car for 2 years with no issues and kept up on all of the maintenance. One day my check engine light comes on and my car starts acting like it doesn't want to move forward. I take it to the dealership and the code that comes back is for the transmission and it says "total failure" and it's going to cost me $4300 to fix. The car only had 73,000 miles on it at this point and is only 4 years old. How in the world does it already need a new transmission? https://www.consumeraffairs.com/automotive/nissan_altima.html

e.    July 2, 2021: My Nissan Altima CVT failed at 65K miles. If you are familiar with the quality of Nissan, that shouldn't be a surprise. I took my car to Nissan in June 2021 because the CVT failed in November of 2020 during the pandemic with only 65K miles. While the car was 19K miles under the mileage limit for warranty coverage, Nissan refused to cover any of the expense because the time limit expired December 2020. I reminded Nissan that the end of 2020 was during the height of the pandemic when vaccines didn't exist, COVID was spreading uncontrollably and CDC guidelines advised people not to leave home except in an emergency. So I waited until I could get vaccinated and safely take the car for repair. https://www.consumeraffairs.com/automotive/nissan_altima.htm

f.    February 4, 2017: There is no excuse for a transmission to need replacing @ 70,800 miles... NONE. Nissan has a huge

problem and will not stand behind it. My car still looks brand new and did drive that way until last week. No warnings just all of a sudden sitting at a traffic light it shut off on me and has never been the same. Found out today that the transmission needs replacing... $3,300 out my pocket because @ 60,000 miles there is no more warranty! PLEASE, if you are reading this, do NOT buy a Nissan product. There are tons of reviews and posts in numerous places of people having the same problem that I have and guess what... No recall from Nissan to stand behind their faulty product.
https://www.consumeraffairs.com/automotive/nissan_altima.html?page=27#sort=oldest&filter=none

**Nissan Had Superior and Exclusive Knowledge of the CVT Defect**

56.     Nissan had superior and exclusive knowledge of the CVT Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

57.     Plaintiff is informed and believes and based thereon alleges that before she purchased her Class Vehicle, and since 2013, Nissan knew about the CVT Defect through sources in its exclusive and/or superior knowledge, including pre-release testing data, early consumer complaints to Nissan and its dealers who are their agents for vehicle repairs, consumer complaints regarding earlier model years with the same CVT equipped, testing conducted in response to those complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA (which Nissan monitors), by developing technical service bulletins in an effort to address the CVT Defect, and through other aggregate data from Nissan dealers about the problem.

58.     Nissan is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Nissan conducts tests, including pre-sale durability testing, on incoming components, including the CVT, to verify the parts are free from defect and align with Nissan's specifications. Thus, Nissan knew or should have known the CVT was defective and prone to put drivers in a dangerous position due to the inherent risk of the defect.

59.    Additionally, on information and belief, Nissan knew of the impact of this defect from the sheer number of reports received from dealerships. Nissan's customer relations department, which interacts with individual dealerships to identify potential common defects, has received numerous reports regarding the defect, which led to the release of the TSBs. Nissan's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

60.    Nissan's warranty department similarly analyzes and collects data submitted by its dealerships to identify trends in its vehicles. It is Nissan's policy that when a repair is made under warranty the dealership must provide Nissan with detailed documentation of the problem and the fix employed to correct it. Dealerships have an incentive to provide detailed information to Nissan, because they will be reimbursed for any repairs if the justification is sufficiently detailed.

61.    In fact, James ("Jim") Blenkarn, Nissan's Senior Manager, Systems Quality Improvement, has publicly confirmed Plaintiff' allegations. Mr. Blenkarn, in response to a question "On how Nissan monitors quality after a vehicle is launched" stated: "For the first six months, sometimes longer, of every new product, we have a team that focuses strictly on the product and examines every claim that comes in for that vehicle model. Our engineers have to target reporting something if it is a 0.5 incident rate. That's our threshold."[2]

62.    On April 27, 2017, Nissan issued TSB NTB17-039 for the class vehicles. The TSB was issued to address "CVT Judder and DTC P17F0 or P17F1

_____

[2] 5 Minutes with… Jim Blenkarn, senior manager, systems quality improvement, Nissan North America" Richard Truett, April 16, 2018 Automotive News. http://www.autonews.com/article/20180416/RETAIL05/180419990/5-minutes-withjimblenkarn-senior-manager-systems-quality

Stored." Specifically, the TSB was issued to correct "transmission judder (shake, shudder, single or multiple bumps or vibration)." The repair procedure provided was replacing the CVT control valve, replacing the CVT sub-assembly, and/or reprogramming the TCM. On information and belief, the problem persisted, and this TSB was superseded numerous times, on May 2, 2017, June 29, 2017, October 12, 2017, October 26, 2017, March 5, 2018, March 14, 2018, October 8, 2018, March 11, 2020, March 25, 2020, September 30, 2020, December 23, 2020, and, most recently, February 19, 2021, with TSB NTB17-039m. These revised TSBs addressed the same concerns but expanded the vehicles affected and added reprogramming.

63.     On information and belief, each TSB issued by Nissan was approved by manager, directors, and/or executives at Nissan. Therefore, on information and belief, Nissan's managers, directors, and/or executives knew, or should have known, about the CVT Defect, but refused to disclose the CVT Defect to prospective purchaser and owners, and/or actively concealed the CVT Defect.

64.     Additionally, Nissan had superior knowledge and knew of the CVT Defect's impact on Plaintiff and the Class due to previously settled litigation concerning the very same transmission and the very same defect, as contained in 2013-2016 Nissan Altima vehicles. *See Gann v. Nissan North America, Inc.*, 3:18CV00966, U.S. District Court for the Middle District of Tennessee, complaint filed September 25, 2018.

65.     As part of the settlement reached in the *Gann* litigation, Nissan issued an extended warranty, on May 11, 2020, entitled: Campaign Bulletin, CVT Warranty Extension. This warranty extension covers 2013 to 2016 Nissan Altimas with the same CVT transmission and defect as the Class Vehicles and "includes the CVT assembly and internal CVT components, gaskets, and seals, CVT control valve body, torque converter, cooler kit (if applicable) and

reprogramming of the Transmission Control Module (TCM), on the vehicles listed in this announcement from its original duration of 60 months/60,000 miles to 84 months/84,000 miles (whichever occurs first)."

66.     The existence of the CVT Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiff and other Class Members known that the Class Vehicles were equipped with transmissions subject to premature failure, they would have paid less for the Class Vehicles or would not have purchased or leased them.

67.     Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiff and Class Members further reasonably expect that Nissan will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Nissan to fail to disclose the CVT Defect to them and to continually deny it.

**Nissan Has Actively Concealed the CVT Defect**

68.     Despite its knowledge of the CVT Defect in the Class Vehicles, Nissan actively concealed the existence and nature of the defect from Plaintiff and Class Members. Specifically, Nissan failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

        a.     all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the CVT;

        b.     that the Class Vehicles, including the CVT, were not in good working order, were defective, and were not fit for their intended purposes; and

        c.      that the Class Vehicles and the CVT were defective, despite Nissan learning of such defects as early as 2013.

69.     When consumers present their Class Vehicles to an authorized

Nissan dealer for CVT repairs, rather than repair the problem under warranty, Nissan dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the CVT Defect.

70.     Nissan has caused Plaintiff and Class Members to expend money and/or time at its dealerships to diagnose, repair or replace the Class Vehicles' CVT and/or related components, despite Nissan's knowledge of the CVT Defect.

**Nissan Has Unjustly Retained a Substantial Benefit**

71.     On information and belief, Plaintiff alleges that Nissan unlawfully failed to disclose the alleged defect to induce her and other putative Class Members to purchase or lease the Class Vehicles.

72.     Plaintiff alleges further that Nissan thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiff's.

73.     As discussed above, therefore, Plaintiff alleges that Nissan unlawfully induced her to purchase her Class Vehicle by concealing a material fact (the defective CVT) and that she would have paid less for the Class Vehicles, or not purchased them at all, had she known of the defect.

74.     Accordingly, Nissan's ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did - and likely will continue to - deceive consumers, should be disgorged.

### CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

76.     The Class and Sub-Class are defined as:

**Class:** All individuals in the United States who

purchased or leased any 2017-2018 Nissan Altima or Sentra equipped with a CVT (the "Nationwide Class" or "Class").

**Nevada Sub-Class:** All members of the Nationwide Class who purchased or leased their Class Vehicles in the State of Nevada.

77.     Excluded from the Class and Sub-Classes are: (1) Nissan, any entity or division in which Nissan has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

78.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Nissan's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

79.     Typicality: Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Nissan. The representative Plaintiff, like all Class Members, has been damaged by Nissan's misconduct in that she has incurred or will incur the cost of repairing or replacing the defective CVT and/or its components. Furthermore, the factual bases of Nissan's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

1        80.   <u>Commonality</u>: There are numerous questions of law and fact

2  common to Plaintiff and the Class that predominate over any question affecting

3  Class Members individually. These common legal and factual issues include the

4  following:

5                a.   Whether Class Vehicles suffer from defects relating to the

6                      CVT;

7                b.   Whether the defects relating to the CVT constitute an

8                      unreasonable safety risk;

9                c.   Whether Nissan knows about the defects pertaining to the

10                     CVT and, if so, how long Nissan has known of the defect;

11

12                d.   Whether the defective nature of the CVT constitutes a

13                     material fact;

14                e.   Whether Nissan has a duty to disclose the defective nature of

15                     the CVT to Plaintiff and Class Members;

16                f.   Whether Plaintiff and the other Class Members are entitled to

17                   equitable relief, including a preliminary and/or permanent

18                   injunction;

19                g.   Whether Nissan knew or reasonably should have known of

20                   the defects pertaining to the CVT before it sold and leased

21                   Class Vehicles to Class Members;

22                h.   Whether Nissan should be declared financially responsible for

23                   notifying the Class Members of problems with the Class

24                   Vehicles and for the costs and expenses of repairing and

25                   replacing the defective CVT and/or its components;

26                i.   Whether Nissan is obligated to inform Class Members of their

27                   right to seek reimbursement for having paid to diagnose,

28                   repair, or replace their defective CVT and/or its components;

1  and

2  81.    Adequate Representation: Plaintiff will fairly and adequately protect

3  the interests of the Class Members. Plaintiff has retained attorneys experienced

4  in the prosecution of class actions, including consumer and product defect class

5  actions involving cars, and they intend to prosecute this action vigorously.

6  82.    Predominance and Superiority: Plaintiff and Class Members have all

7  suffered and will continue to suffer harm and damages as a result of Nissan's

8  unlawful and wrongful conduct. A class action is superior to other available

9  methods for the fair and efficient adjudication of the controversy. Absent a class

10  action, most Class Members would likely find the cost of litigating their claims

11  prohibitively high and would therefore have no effective remedy. Because of the

12  relatively small size of the individual Class Members' claims, it is likely that

13  only a few Class Members could afford to seek legal redress for Nissan's

14  misconduct. Absent a class action, Class Members will continue to incur

15  damages, and Nissan's misconduct will continue without remedy or relief. Class

16  treatment of common questions of law and fact would also be a superior method

17  to multiple individual actions or piecemeal litigation in that it will conserve the

18  resources of the courts and the litigants and promote consistency and efficiency

19  of adjudication.

20  **FIRST CAUSE OF ACTION**
**(Breach of Express Warranty)**

21  *On Behalf of the Nationwide Class and, in the alternative, the Nevada Sub-Class*

22  83.    Plaintiff incorporates by reference the allegations contained in the

23  above paragraphs as though fully set forth herein.

24  84.    Plaintiff brings this cause of action on behalf of herself and the

25  Class, or, in the alternative, on behalf of the Nevada Sub-Classes.

26  85.    Each class vehicle sold by Nissan included an express warranty that

27  covered the transmission and warranted that Nissan would repair or replace any

28  defects in materials and workmanship in the class vehicles.

86.     Nissan provided all purchasers and lessees of the class vehicles with a written warranty that "begins on the date the vehicle is delivered to the first retail buyer or put in use, whichever is earlier." Under the warranty's powertrain coverage, Nissan expressly warranted that the warranty "covers any repairs needed to correct defects in materials or workmanship." The warranty's powertrain coverage covers the vehicles for 60 months or 60,000 miles, whichever comes first. Nissan promised to cover listed powertrain components under is warranty, including the transmission components such as the "[t]ransmission and [t]ransaxle [c]ase and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover, A/T cooler, and electronic transmission controls."

87.     As a result of Nissan's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the CVT Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

88.     Nissan provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Accordingly, Nissan's express warranty is an express warranty under Nevada law.

89.     Nissan manufactured and/or installed the transmission and its component parts in the Class Vehicles, and the transmission and its component parts are covered by the express warranty.

90.     Nissan provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty for three (3) years and 36,000 miles, and a Powertrain Warranty for five (5) years and 60,000 miles.

91. On information and belief, Nissan breached the express warranty by purporting to repair the transmission and its component parts by replacing the defective or damaged transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the CVT Defect manifests outside of the Class Vehicles' express warranty period.

92. Plaintiff gave Nissan notice of its breach by presenting her vehicle to Nissan dealerships for repairs that were not made.

93. However, Plaintiff was not required to notify Nissan of the breach and/or was not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranty would have been futile. Nissan was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

94. As a direct and proximate cause of Nissan's breach, Plaintiff and Class Members suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff and Class Members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

95. Additionally, Nissan breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Nissan falsely informed class members that there was no problem with their vehicle, performed ineffective software flashes, or replaced defective components in the CVT Transmissions with equally defective components, without actually repairing the vehicles.

96. Plaintiff and Class Members are entitled to legal and equitable relief against Nissan, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**SECOND CAUSE OF ACTION**
**(Violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §**
**598.0903, _et seq._)**
*On Behalf of the Nevada Sub-Class*

97.     Plaintiff incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

98.     Plaintiff Minerva Martinez brings this cause of action on behalf of herself and on behalf of the members of the Nevada Sub-Class.

99.     The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et seq. prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

100.   Defendant's actions as set forth below occurred in the conduct of trade or commerce.

101.   By failing to disclose and concealing the defective nature of the CVT from Plaintiff and prospective Class Members, Defendant violated the Nevada DTPA, as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

102. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

103. Defendant knew and continues to know that the Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

104. Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the CVT and/or the associated repair costs because:

      a.  Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT;

      b.  Plaintiff and Class Members could not reasonably have been expected to learn or discover that their CVT had a dangerous safety defect until it manifested; and

      c.  Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn of or discover the safety defect.

105. In failing to disclose the defective nature of the CVT, Defendant knowingly and intentionally concealed and continues to conceal material facts and breached its duty not to do so.

106. The facts Defendant concealed from or failed to disclose to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had they known that the Class Vehicles' CVT was defective, Plaintiff and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

107. Plaintiff and Class Members are reasonable consumers who do not

expect the transmissions installed in their vehicles to exhibit problems such as juddering, failure to shift, stalling, and delayed or no acceleration.

108.   This is the reasonable and objective consumer expectation relating to vehicle transmissions.

109.   Plaintiff and the Class are entitled to equitable relief.

### THIRD CAUSE OF ACTION
### (Breach of Common Law Implied Warranty of Merchantability and Breach of Implied Warranty Pursuant to Nev. Rev. Stat. §§ 104.2314 and 104A.2212)
*On Behalf of the Nevada Sub-Class*

110.   Plaintiff incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

111.   Plaintiff Minerva Martinez brings this cause of action on behalf of herself and on behalf of the members of the Nevada Sub-Class.

112.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

113.   Defendant provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

114.   However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles and their CVTS suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

115.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their CVTS that were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles

1  and their CVTs would be fit for their intended use while the Class Vehicles were

2  being operated.

3     116.   Contrary to the applicable implied warranties, the Class Vehicles

4  and their CVTS at the time of sale and thereafter were not fit for their ordinary

5  and intended purpose of providing Plaintiff and Class Members with reliable,

6  durable, and safe transportation. Instead, the Class Vehicles are defective,

7  including the defective design of their CVT.

8     117.   The alleged CVT Defect is inherent in each Class Vehicle and was

9  present in each Class Vehicle at the time of sale.

10    118.   As a result of Defendant's breach of the applicable implied

11 warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

12 loss of money, property, and/or value of their Class Vehicles. Additionally, as a

13 result of the CVT Defect, Plaintiff and Class Members were harmed and suffered

14 actual damages in that the Class Vehicles' CVT components are substantially

15 certain to fail before their expected useful life has run.

16    119.   Defendant's actions, as complained of herein, breached the implied

17 warranty that the Class Vehicles were of merchantable quality and fit for such

18 use in violation of Nevada Common Law Implied Warranties and Nevada

19 Revised Statutes §§ 104.2314 and 104A.2212.

20                **FOURTH CAUSE OF ACTION**
**(Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. and Fed. R. Civ. P. 57)**
21 *On Behalf of the Nationwide Class and, in the alternative, the Nevada Sub-Class*

22    120.   Plaintiff incorporates by reference the allegations contained in the

23 above paragraphs as though fully set forth herein.

24    121.   Plaintiff brings this cause of action on behalf of herself and the

25 Class, or, in the alternative, on behalf of the Nevada Sub-Class. Declaratory

26 relief is intended to minimize "the danger of avoidable loss and unnecessary

27 accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay

28 Kane, Federal Practice and Procedure § 2751 (3d ed. 1998). 231. There is an

1    actual controversy between Nissan and Plaintiff concerning whether the Class

2    Vehicles' defect creates an unreasonable safety hazard.

3        122.    Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and

4    legal relations of any interested party seeking such declaration, whether or not

5    further relief is or could be sought."

6        123.    Despite long knowing the nature of the Class Vehicles' defect and

7    its likelihood of placing Plaintiff, the Classes, and the public at risk of grave

8    injury, Nissan refuses to publicly acknowledge the Class Vehicles' dangerous

9    defect. Instead, Nissan has unsuccessfully attempted to remediate the defect

10   without advising its consumers and other members of the public of the defect.

11       124.    Accordingly, based on Nissan's failure to act, Plaintiff seeks a

12   declaration that the Vehicles are defective, as alleged herein. The defective

13   nature of the Vehicles is material and requires disclosure to all persons who own

14   them.

15       125.    The declaratory relief requested herein will generate common

16   answers that will settle the controversy related to the alleged defective nature of

17   the Vehicles and the reasons for their repeated failure. There is an economy to

18   resolving these issues as they have the potential to eliminate the need for

19   continued and repeated litigation.

20                          **FIFTH CAUSE OF ACTION**
21                            **(Unjust enrichment)**
     *On Behalf of the Nationwide Class and, in the alternative, the Nevada Sub-Class*

22       126.    Plaintiff incorporates by reference the allegations contained in the

23   above paragraphs as though fully set forth herein.

24       127.    Plaintiff brings this cause of action on behalf of herself and the

25   Class, or, in the alternative, on behalf of the Nevada Sub-Class.

26       128.    As a direct and proximate result of Nissan's failure to disclose

27   known defects, Nissan has profited through the sale and lease of the Class

28   Vehicles. Although these vehicles are purchased through Nissan's agents, the

1  money from the vehicle sales flows directly back to Nissan.

2      129.   Additionally, as a direct and proximate result of Nissan's failure to

3  disclose known defects in the Class Vehicles, Plaintiff and Class Members have

4  vehicles that require repeated, high-cost repairs that can and therefore have

5  conferred an unjust substantial benefit upon Nissan.

6      130.   Nissan has been unjustly enriched due to the known defects in the

7  Class Vehicles through money that earned interest or otherwise added to

8  Nissan's profits when said money should have remained with Plaintiff and class

9  members.

10     131.   As a result of Nissan's unjust enrichment, Plaintiff and Class

11 Members have suffered damages.

12                        **RELIEF REQUESTED**

13     132.   Plaintiff, on behalf of herself and all others similarly situated,

14 requests the Court to enter judgment against Nissan, as follows:

15         a.   An order certifying the proposed Class and Sub-Classes,

16              designating Plaintiff as named representative of the Class, and

17              designating the undersigned as Class Counsel;

18         b.   A declaration that Nissan is financially responsible for

19              notifying all Class Members about the defective nature of the

20              CVT, including the need for periodic maintenance;

21         c.   An order enjoining Nissan from further deceptive distribution,

22              sales, and lease practices with respect to Class Vehicles;

23              compelling Nissan to issue a voluntary recall for the Class

24              Vehicles pursuant to. 49 U.S.C. § 30118(a); compelling

25              Nissan to remove, repair, and/or replace the Class Vehicles'

26              defective CVT and/or its components with suitable alternative

27              product(s) that do not contain the defects alleged herein;

28              enjoining Nissan from selling the Class Vehicles with the

1   misleading information; and/or compelling Nissan to reform
2   its warranty, in a manner deemed to be appropriate by the
3   Court, to cover the injury alleged and to notify all Class
4   Members that such warranty has been reformed;

5   d.   An award to Plaintiff and the Class for compensatory,
6   exemplary, and statutory damages, including interest, in an
7   amount to be proven at trial;

8   e.   A declaration that Nissan must disgorge, for the benefit of the
9   Class, all or part of the ill-gotten profits it received from the
10   sale or lease of its Class Vehicles or make full restitution to
11   Plaintiff and Class Members;

12   f.   An award of attorneys' fees and costs, as allowed by law;

13   g.   An award of pre-judgment and post-judgment interest, as
14   provided by law;

15   h.   Leave to amend the Complaint to conform to the evidence
16   produced at trial; and

17   i.   Such other relief as may be appropriate under the
18   circumstances.

19   **DEMAND FOR JURY TRIAL**

20   133.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff
21   demands a trial by jury of any and all issues in this action so triable.

22   Respectfully Submitted this 29th day of December, 2021.

/s/ *James C. Shah*_____

James C. Shah (SBN 260435)
MILLER SHAH, LLP
1230 Columbia Street, Ste. 1140
San Diego, CA 92101
Telephone: 619-235-2416
Facsimile: 866-300-7367
jcshah@millershah.com

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby
Laura.Goolsby@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile:  (310) 943-0396

Norberto J. Cisneros, Esq.
Barbara McDonald, Esq.
Maddox & Cisneros, LLP
3230 S. Buffalo Drive, Suite 108
Las Vegas, Nevada 89117
Telephone: (702) 366-1900
Facsimile: (702) 366-1999

MELISSA S. WEINER (*PHV Forthcoming*)
   mweiner@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile:  (612) 389-0610

Attorneys for Plaintiff

CLASS ACTION COMPLAINT